**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Antoine L. Moore (#B-68521), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 C 1596 |
| | ) | |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| Michael Lemke, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Antoine Moore, an Illinois state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendant Michael Lemke, the former Warden of the Stateville Correctional Center, violated Plaintiff's constitutional rights by subjecting him to cruel and unusual conditions of confinement. More specifically, Plaintiff alleges that he was forced to live in filthy and sometimes overcrowded conditions during the nineteen days or so that he spent in Stateville's Northern Reception and Classification Center. This matter is before the Court for ruling on Defendant's motion for summary judgment. For the following reasons, the motion is granted.

**I.  SUMMARY JUDGMENT STANDARD**

"The Court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hanover Ins. Co. v. Northern Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014). In determining whether there are factual questions, the Court must view all the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986)).

To survive summary judgment, the nonmoving party must make a sufficient showing of evidence for each essential element of his case on which he bears the burden at trial. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936-937 (7th Cir. 2007) (citing *Celotex*, 477 U.S. at 322-23). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d

653, 656 (7th Cir. 2014) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010) (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008)).

## II. NORTHERN DISTRICT OF ILLINOIS LOCAL RULE 56.1

"Under the Local Rules of the Northern District of Illinois, a party filing a motion for summary judgment under Fed. R. Civ. P. 56 must serve and file 'a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law.'" *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008) (quoting *Koszola v. Bd. of Educ. of City of Chicago,* 385 F.3d 1104, 1107-08 (7th Cir. 2004)). The opposing party must then "file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (citing N.D. Ill. R. 56.1(b)(3)(B)); *Fabiyi v. McDonald's Corp.*, No. 11 CV 8085, 2014 WL 985415, at *1 (N.D. Ill. Mar. 13, 2014) (Kim, Mag. J.) (*aff'd* 595 F. App'x 621 (7th Cir. 2014)). The opposing party may also present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). A plaintiff's *pro se* status does not excuse him from complying with these rules. *Morrow v. Donahoe*, 564 F. App'x 859, 860 (7th Cir. 2014) (unpublished opinion) (citing *Pearle Vision, Inc. v. Romm,* 541 F.3d 751, 758 (7th Cir. 2008) (inter alia)).

Consistent with the Local Rules, Defendant filed a Statement of Material Facts along with his motion for summary judgment. (*See* Dkt. No. 48, Defts. Stmt. of Facts.) Each substantive assertion of fact in Defendant's Local Rule 56.1(a)(3) Statement is supported by evidentiary material in the record. Also in accordance with the Local Rules, Defendant filed and served on Plaintiff a Local Rule 56.2 Notice, which explains in detail the requirements of Local Rule 56.1. (*See* Dkt. No. 50, "Notice to Pro Se Litigant Opposing Motion for Summary Judgment.")

Plaintiff has submitted multiple documents in response to Defendant's motion for summary judgment; however, he has failed to specifically respond to Defendant's Statement of Uncontested Facts, to include his own Statement of Additional Facts, or to provide a list of disputed facts that require a trial to resolve. Because Plaintiff has failed to controvert Defendant's facts, the Court may deem those facts admitted for summary judgment purposes. *See, e.g., Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Indeed, Plaintiff does not contest the essential facts

underlying this opinion; he disputes only whether Lemke can be held liable under the circumstances of this case. Accordingly, the following facts, all supported by the record, are undisputed for purposes of the summary judgment motion:

## III.    RELEVANT FACTS

Plaintiff Antoine Moore is an inmate in the custody of the Illinois Department of Corrections (hereinafter, "IDOC"). (Defendant's Statement of Facts, ¶ 1.) Upon his admission to IDOC custody, Plaintiff was placed at Stateville's Northern Reception and Classification Center ("NRC") for about nineteen days, from May 30, 2014, to June 18, 2014. (*Id.*, ¶ 2.) Plaintiff challenges several aspects of the conditions of his confinement at Stateville NRC. (*Id.*, ¶¶ 6-12.)

On arrival at Stateville NRC, Plaintiff was initially housed in a "medical room" along with eight other men. (*Id.*, ¶ 6.) The medical room was located in the health care unit. (*Id.*) The room had a shower, toilet, and sink. (*Id.*) Correctional officials furnished Plaintiff with a "tub boat raft"-like mattress, a blanket, a jumpsuit, over-sized boxers, state shoes, a toothbrush, soap, toothpaste, and deodorant. (*Id.*, ¶ 7.) The toilet in the medical room was functional and it flushed, but there was built-up mold and mildew on the fixture. (*Id.*, ¶ 8.)

On June 1, 2014 (about three days later), Plaintiff was transferred to a regular cell. (*Id.*, ¶ 10.) Plaintiff maintains that neither the lights nor the call button in the cell worked, the cell's floor was dirty and trash-strewn, the toilet was "filthy with mold and stuff," and the sink was "nasty," with built-up dirt and mold. (*Id.*) Although the cell had no interior lights, Plaintiff was still able to read his Bible with ambient light. The cell had a functioning toilet, and Plaintiff's bed had a mattress. (*Id.*) Plaintiff requested cleaning supplies, but no one ever provided any means for him to scrub down his cell. (*Id.*, ¶12.)

On June 17, 2014, Plaintiff was moved out of his cell and placed in a bullpen along with fifty other men. (*Id.*, ¶ 11.) The bullpen reeked of urine, birds flew about, and cockroaches and other bugs were present. (*Id.*) Plaintiff spent one night in the bullpen. (*Id.*)

During this time period, Defendant Michael Lemke was the Warden of the Sheridan Correctional Center, not Stateville. (*Id.*, ¶ 3.) Plaintiff filed a grievance directed to Lemke's attention, but he never spoke to Lemke or wrote to him. (*Id.*, ¶ 4.) Because Lemke was not assigned to Stateville in 2014, he had no personal knowledge concerning the conditions at that facility. (*Id.*, ¶ 13.) Nor did Lemke play any role in inmate housing assignments at Stateville in 2014. (*Id.*, ¶ 14.) Plaintiff's sole basis for believing that Lemke was Stateville's warden at the time was that an inmate handbook named Lemke as warden. (*Id.*, ¶ 5.)

**IV. ANALYSIS**

There is no genuine dispute as to any outcome-determinative facts, and the Court finds that Defendant is entitled to judgment as a matter of law. The Court questions whether Plaintiff's temporary hardships rose to the level of a constitutional violation; regardless, there is no triable issue as to whether the only named Defendant was personally involved in any unconstitutional conditions of confinement Plaintiff may have endured while briefly incarcerated at the Stateville Correctional Center. Accordingly, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion opposing summary judgment.

Even assuming (without finding) that the conditions of Plaintiff's confinement rose to the level of a constitutional violation, Defendant Lemke is entitled to judgment as a matter of law because the record does not support an inference that Lemke was in any way involved in Stateville's administration during the relevant time period.

Plaintiff has failed to establish a triable issue of fact as to whether the alleged violations of his constitutional rights occurred at Lemke's direction or with his knowledge and consent. To survive summary judgment, Plaintiff would have had to provide evidence reflecting Lemke's direct, personal involvement, as required by *Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010), *inter alia*. Section 1983 is premised on the wrongdoer's personal responsibility; therefore, an individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) (citations omitted). Section 1983 does not create collective or vicarious responsibility. *Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery. *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003). Plaintiff has not met his burden of showing Defendant's personal involvement.

In his summary judgment materials, Plaintiff states—without evidentiary support--that Defendant was "present" at Stateville NRC at certain times when a court-appointed monitor visited the facility. Plaintiff cites a 2014 John Howard Associating Monitoring Report as ostensibly in support of that assertion. (*See* R. 55, Unmarked Exhibit to Plaintiff's "Rule 216 Request for Admission of Facts or of Genuineness of Documents.") But the Court finds no references to Lemke in that report. To the contrary, the first page of the report refers to a

"leadership change at the facility with a new Warden assigned to Stateville." (*Id.*, p. 1, n.1.) As noted *supra*, a party opposing summary judgment must cite specific parts of the record that support his contentions. *See* Local Rule 56.2 (N.D. Ill.) ("If you disagree with any fact offered by the defendant, you need to explain how and why you disagree with the defendant. You also need to explain how the documents or declarations that you are submitting support your version of the facts.") Plaintiff offers no foundation for arguing that Lemke was somehow aware of or responsible for Plaintiff's living conditions after Lemke transferred to a different prison.

It is unfortunate if Plaintiff had an old prison handbook, or the handbook was not updated to name the current warden at Stateville. But Plaintiff evidently never conducted discovery to assess the degree of Defendant's knowledge or involvement. Nor does the record reflect any effort on the part of Plaintiff to identify any other IDOC employee who was at Stateville during the time period in question, and to whom he complained about his living conditions. Even if opposing counsel's deposition questions did not alert Plaintiff to the likelihood that Defendant was not a proper party to this lawsuit (*see* Defendant's Exhibit A, Deposition of Antoine Moore, at pp. 11.), counsel expressly advised Plaintiff of the issue at a status hearing held on January 19, 2016. In her docket entry on that date summarizing the hearing (R. 37), Judge Susan Cox noted, in relevant part, "Defendants believe that they can win a motion for summary judgment based on Plaintiff's pleading only naming a warden of the Stateville Correctional Center, who was not in the position at the time of Plaintiff's incarceration." Yet Plaintiff never sought leave to amend his complaint to name the warden at Stateville during the May/June 2014 time period. In the absence of any allegation of wrongdoing on the part of the named Defendant, he is entitled to judgment as a matter of law.

It is now too late for Plaintiff to amend his complaint to name the actual warden at Stateville in May and June 2014, or any other person directly responsible for his living conditions. In Illinois, the statute of limitations for Section 1983 actions is two years. *See, e.g., Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008); 735 ILCS § 5/13-202. Illinois law does not toll the statute of limitations for prisoners. *Bryant v. City of Chicago*, 746 F.3d 239, 242 (7th Cir. 2014) (citing *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992)). Furthermore, the Court finds any amendment to name new defendants, even if relation back under 15(c) applied, would be futile. Plaintiff's complaint survived initial screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a) in part because Plaintiff alleged his conditions of confinement exacerbated his medical conditions. However, at this stage of the proceedings, Plaintiff must have evidence that the conditions created medical complications for him, and he has no such evidence. The conditions alone do not rise to the level of a constitutional violation.

The Eighth Amendment imposes a duty to "provide humane conditions of confinement" and "prison officials must ensure that inmates receive adequate food, clothing, shelter, and

medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Rice ex rel. Rice v. Corr. Med. Services*, 675 F.3d 650, 664 (7th Cir. 2012). "Life's necessities include shelter, heat, clothing, sanitation, and hygiene items." *Woods v. Schmeltz*, No. 14 CV 1336, 2014 WL 7005094, at *1 (C.D. Ill. Dec. 11, 2014) (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)). Even when an individual condition of confinement is not serious enough to violate the Constitution, conditions may cumulatively do so "when they have 'a mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Budd v. Motley*, 711 F.3d 840, 842-43 (7th Cir. 2013) (quoting *Wilson v. Seiter,* 501 U.S. 294, 304 (1991)).

However, to implicate the Eighth Amendment, the deprivations generally must create a serious risk to an inmate's health or safety, *see Farmer*, 511 U.S. at 835, which may be shown by conditions that create a sufficiently high probability of harm. *Thomas v. Illinois*, 697 F.3d 612, 615 (7th Cir. 2012). Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment. *Rice*, 675 F.3d at 665 (citation omitted). Determining whether conditions violate an inmate's constitutional rights involves a two-fold analysis: (1) "whether the conditions at issue were sufficiently serious so that a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities;" and (2) "whether prison officials acted with deliberate indifference to the conditions in question." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal quotation marks and citation omitted). "Deliberate indifference ... means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.* In the instant case, the deprivations about which Plaintiff complains—even in their totality—are not serious enough to satisfy the objective prong required for liability.

Plaintiff first spent about three days in a medical ward at Stateville NRC. (Moore Dep., p. 11.) Plaintiff admits that the medical room had a working shower, toilet, and sink, (*id.*), and that correctional officials provided him with an inflatable mattress, a blanket, a jumpsuit, boxers, shoes, a toothbrush, soap, toothpaste, and deodorant. (*Id.*, pp. 12-16.) The toilet in the medical room was functional and it flushed. (*Id.*, ¶ 8.) Plaintiff does not allege that he was denied any basic necessity; he complains only that there was mold and mildew on the toilet fixture. (*Id.*) But "[t]he mere presence of some dirt, mold, or mildew ... does not establish the type of severe deprivation needed to establish a constitutional violation." *Downs v. Carter*, 13 C 3998, 2016 WL 1660491, at *10 (N.D. Ill. Apr. 27, 2016) (Gottschall, J.) (citing *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001)). Plaintiff describes a relatively minor unpleasantness.

Plaintiff's short stay in the medical unit also weighs against finding an Eighth Amendment violation. "The length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards." *Hutto v. Finney,* 437 U.S. 678, 686-87 (1978) ("A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably

cruel for weeks or months"); *see also DeSpain v. Uphoff,* 264 F.3d 965, 974 (10th Cir. 2001) ("While no single factor controls the outcome of these cases, the length of exposure to the conditions is often of prime importance"). Spending three days in a room with a toilet that needed to be cleaned did not rise to the level of a constitutional violation.

Plaintiff maintains that he spent the next sixteen days in a cell that lacked lights and an emergency call button, but he concedes that it was light enough in the cell for him to read; furthermore, he does not say that there was some emergency that necessitated him to avail himself of a call button. Although a somewhat closer call, Plaintiff's allegations that the floor, toilet, and sink were dirty, and that he was denied cleaning supplies, are not actionable on the basis of two weeks or so in that environment. Claims of adverse conditions for a short a period of time have been allowed to proceed only when the conditions were extreme. *See Vinning–El v. Long,* 482 F.3d 923, 924 (7th Cir. 2007) (prisoner held in a cell for three to six days with no working sink or toilet, floor covered with water, and walls smeared with blood and feces); *Johnson v. Pelker,* 891 F.2d 136, 139 (7th Cir. 1989) (inmate held for three days in cell with no running water and feces smeared on walls). In the case at bar, while the Court in no way condones the conditions described, they are not unconstitutional.

For the same reasons, spending a single, disagreeable night in a crowded bullpen with birds and insects and the smell of urine was not a matter of constitutional magnitude. "The Constitution does not require that prisons be comfortable, and the fact that prison conditions are sometimes harsh is part of the price that convicted individuals and pre-trial detainees must pay for their charged offenses." *Kropp v. McCaughtry*, 915 F. Supp. 85, 91 (E.D. Wis. 1996) (citing *Rhodes v. Chapman,* 452 U.S. 337, 347-49 (1981)); *see also Rice*, 675 F.3d at 666 ("prison conditions may be uncomfortable, even harsh, without being inhumane") (citing *Farmer,* 511 U.S. at 832). "Routine discomfort is part of the penalty that prisoners pay for their offenses against society." *McCree v. Sherrod*, 408 F. App'x 990, 992 (7th Cir. 2011) (non-precedential opinion) (citation omitted). In short, although Plaintiff endured a somewhat rocky introduction to incarceration, the adversity he experienced for his first nineteen days was not extreme enough or long enough to implicate the Eighth Amendment.

## V. Conclusion

For all of the foregoing reasons, the Court concludes that Defendant is entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claims. Even viewing the summary judgment record in the light most favorable to Plaintiff, no reasonable trier of fact could find that the named Defendant acted with deliberate indifference to Plaintiff's purportedly cruel and unusual conditions of confinement. The record does not support a finding that Defendant was personally involved in—or even aware of—the alleged circumstances giving rise

to this lawsuit. In any event, the conditions were neither so appalling nor so enduring as to rise to the level of a constitutional violation. Therefore, Defendant's motion for summary judgment [46] is granted, and Plaintiff's motion opposing summary judgment [59] is denied. The Court directs the Clerk to enter final judgment.

If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, the Court of Appeals could assess a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal Court without pre-paying the filing fee unless he or she is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Boyce must file any Rule 59(e) motion within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The Court cannot extend the time to file a motion pursuant to Rule 59(e). *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Court rules upon the Rule 59(e) motion. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Boyce must file any Rule 60(b) motion within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must file the motion no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The Court cannot extend the time to file a Rule 60(b) motion. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Court rules on the Rule 60(b) motion only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

ENTERED:


Dated: 8/30/2016, 2016                           */s/ Sharon Johnson Cole*man
                                                 SHARON JOHNSON COLEMAN
                                                 United States District Court Judge

8